IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:25-cr-307 (RDA) |
| | ) | |
| SOHAIB AKHTER, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant Sohaib Akhter's Motion to Suppress Evidence (Dkt. 68). Considering the Motion and the Government's Opposition (Dkt. 89), as well as the arguments raised at the hearing held before this Court on April 29, 2026, this Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

A grand jury returned an Indictment against Defendant and his brother, Codefendant Muneeb Akhter, on November 13, 2025. Dkt. 1. An arraignment was held on December 10, 2025, and trial was set for February 2, 2026. Dkt. 20.

On January 14, 2026, the Government obtained a search warrant from U.S. Magistrate Judge William B. Porter. Dkt. 89-1 (the "Warrant"). Pursuant to the Warrant, the Government was authorized to "search" Defendant for "the purpose of photographing his hands, fingers, and forearms." *Id.* at 3. Specifically, the Warrant provides that "digital photographs of the hands, fingers, and forearms will be taken." *Id.* In support of its application for the Warrant, the Government submitted the affidavit of Senior Special Agent Umesh Patel. Dkt. 89-2 (the "Affidavit"). In the Affidavit, the Government specifically asserted that it was seeking "photographs of each of the following body parts: hands, fingers, and forearms (to include a photo

from the point of view of S. AKHTER's chest to recreate the perspective of some of the photos believed to have been taken by S. AKHTER)." *Id.* at 9.

On January 15, 2026, a grand jury returned a Superseding Indictment. Dkt. 41. The Superseding Indictment charges Defendant with: (i) conspiracy, in violation of 18 U.S.C. § 371 (Count 1); (ii) password trafficking, in violation of 18 U.S.C. § 1030(a)(6) (Count 7); (iii) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count 8); and (iv) witness tampering, in violation of 18 U.S.C. § 1512(b)(1) (Count 13). Dkt. 41. On January 21, 2026, Defendant was arraigned on the Superseding Indictment, and trial was continued to May 4, 2026. Dkt. 49.

On April 13, 2026, Defendant, by counsel, timely filed his Motion, seeking to suppress certain photographs taken by law enforcement officers. Dkt. 68. The Motion recounts that, on January 28, 2026, before the parties appeared in Court for a hearing, law enforcement agents executed the Warrant and took approximately twenty photographs of Defendant. *Id.* at 2. After the hearing, Defendant was taken to the lower-level interview rooms, and federal agents sought to take additional photographs, including posing Defendant to "replicate the image in the photos seized from his mobile phone." *Id.* Defendant seeks to suppress all photographs taken on January 28, 2026, as violative of his Fourth and Fifth Amendment rights. *Id.*

On April 15, 2026, Defendant indicated that he may want to change his plea. Dkt. 72. Defendant signed a plea agreement but did not proceed through the entire plea colloquy. *Id.*

On April 17, 2026, Defendant filed a motion to proceed *pro se* and relegate counsel to a standby role. Dkt. 78.

On April 20, 2026, the Government filed its Opposition to the Motion to Suppress, arguing that the photographs should not be suppressed. Dkt. 89. Importantly, the Government attached a

selection of the photographs, which depict Defendant, in his jail jumpsuit, as well as various photographs of his hands. *Id.*

On April 22, 2026, the Court undertook a *Faretta* inquiry with Defendant and determined that Defendant was knowingly and voluntarily waiving his right to be represented by counsel. Dkt. 98.

On April 29, 2026, the Court held a hearing on the Motion at which Defendant, proceeding *pro se*, argued his Motion.[1]

## II.  ANALYSIS

Defendant argued that the photographs were taken in violation of his Fourth and Fifth Amendment rights.  The Court addresses each argument in turn and then further addresses concerns raised at the hearing regarding Federal Rule of Evidence 403.

### A.    *Fourth Amendment*

The Fourth Amendment "protects people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'"  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 62 (1992).  Not all governmental actions implicate the Fourth Amendment, instead "the capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy."  *United States v. Castellanos*, 716 F.3d 828, 833 (4th Cir. 2013).  If there is a legitimate expectation of privacy, then "official intrusion into that private sphere qualifies as a search and requires a warrant."  *Carpenter v. United States*, 585 U.S. 296, 304 (2018).

As an initial matter, the Court notes that Defendant has not asserted that the Government was required to seek a warrant in order to obtain photographs of his hands.  The Supreme Court

---

[1] At the hearing, the Court again inquired whether Defendant still wanted to proceed *pro se*, and Defendant confirmed that he did.

has recognized that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Thus, courts have recognized that no warrant is required to obtain evidence related to physical characteristics such as face, voice, hands or feet. *See United States v. Dionisio*, 410 U.S. 1, 14 (1973) (no warrant required for voice exemplar); *United States v. Anthony*, 2019 WL 471984, at *3 (W.D. Va. Feb. 5, 2019) ("The court holds that defendants have no reasonable expectation of privacy to their heads, faces, necks, arms, and hands."); *see also United States v. Duggar*, 2021 WL 4777131, at *5 (W.D. Ark. Oct. 13, 2021) ("There is no legal authority to suggest agents needed a warrant before they could photograph Mr. Duggar's hands and feet."). Defendant cites no authority to the contrary. Thus, having failed to establish an expectation of privacy with respect to his hands, which courts recognize are generally exposed to the public, Defendant's Fourth Amendment challenge fails.

Even assuming that a warrant was required, the Search Warrant at issue here specifically provided for "photographing his hands, fingers, and forearms." Dkt. 89-1. In support of the Search Warrant, agents submitted an affidavit which set forth the anticipated methodology to be employed: "The FDIC-OIG or another federal law enforcement agency will take photographs of each of the following body parts: hands, fingers, and forearms (to include a photo from the point of view of S. AKHTER's chest to recreate the perspective of some of the photos believed to have been taken by S. AKHTER)." Dkt. 89-2. The Eighth Circuit has addressed a closely analogous scenario. In *United States v. Merrell*, 842 F.3d 577 (8th Cir. 2016), the defendant argued that the district court erred in denying her motion to suppress 47 photographs taken of her hands during the execution of a search warrant. *Id.* at 581. As discussed in the district court decision, the defendant specifically sought to suppress the photographs because the agent "manipulated Merrell's hands during the execution of the search warrant to mimic the position of the hands depicted in images of child pornography that Merrell was suspected of producing." *United States*

4

*v. Merrell*, 88 F. Supp. 3d 1017, 1032 (D. Minn. 2015). On appeal, the Eighth Circuit recognized that there is no requirement that search warrants include a specification of the precise manner in which they are to be executed and found that "[t]he manner in which the officers carried out the search here did not exceed the scope of the warrant." *Merrell*, 842 F.3d at 581. So too here. The Search Warrant, which was premised on the Affidavit, clearly contemplated that several photographs would be taken that would include positioning Defendant's body to account for different perspectives and to recreate certain photographs that law enforcement had located and suspected were created by Defendant. Thus, manipulation of Defendant's hands in this way does not go beyond the Search Warrant's authorization of photographs of Defendant's "hands, fingers, and forearms." Dkt. 89-1. Accordingly, there is no Fourth Amendment violation in this regard, and the Motion will be denied to the extent that it rests on the Fourth Amendment.

### B.    *Fifth Amendment*

Defendant next raises a Fifth Amendment challenge to the photographs of his hands. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "In general, the Fifth Amendment protects the accused from compelled verbal statements, but can also apply to compelled physical acts which constitute communications." *United States v. Toliver*, 793 F. App'x 151, 162 (4th Cir. 2010). It is well settled, however, that the protections of the Fifth Amendment do not apply to physical characteristics such as the giving of a blood sample, voice sample, or handwriting exemplar. *Pennsylvania v. Muniz*, 496 U.S. 582, 595-98 (1990); *United States v. Dionisio*, 410 U.S. 1, 7, 93 (1973); *Gilbert v. California*, 388 U.S. 263, 266-67 (1967). The key distinction as to whether the Fifth Amendment applies is whether the incriminating communications, verbal or physical, are testimonial in nature. *United States v. Hubbell*, 530 U.S. 27, 34 (2000).

5

Here, the photographs of Defendant's hands, as put forward by the Government, are not testimonial in nature. Dkt. 89-3.[2] Indeed, the Fourth Circuit has held that similar photographs of certain characteristics of a defendant's body, such as tattoos, do not violate the Fifth Amendment. *Tolliver*, 793 F. App'x at 162-63 (holding that photographing a defendant's tattoos does not constitute a Fifth Amendment violation). In *Tolliver*, the Fourth Circuit specifically held that a defendant's tattoos were not protected by the Fifth Amendment because "though the tattoos incriminated him because he had branded BHB slogans and symbols all over his body, they were an open physical characteristic outside the protections of the Fifth Amendment." *Id*. This extends even to requiring a defendant to reveal his tattoos for photographing. *See United States v. Bariola*, 2023 WL 161943, at *2 (W.D. Va. Jan. 11, 2023) ("But the Fifth Amendment does not protect a criminal suspect from being required to display 'identifiable physical characteristics.' 'Federal courts have [] held that photographing a defendant's tattoos for display to the jury or requiring a defendant reveal his tattoos to a jury does not run afoul of the Fifth Amendment.'" (internal citations omitted)); *see also Gardner v. Norris*, 949 F. Supp. 1359, 1374 (E.D. Ark. 1996) (holding that criminal defendants do not suffer constitutional harm when they are asked to display tattoos). Here, as with the Fourth Circuit's jurisprudence with respect to tattoos, positioning Defendant's

---

[2] The Court did have concerns, based on Defendant's representation that he was posed "to replicate the image in the photos seized from his mobile phone," and that he was "postured in a manner similar to photograph(s) of a hand and harm holding a firearm," Dkt. 68 at 2, that law enforcement had forced Defendant to be photographed holding a firearm to replicate the images in the Affidavit. At the hearing, the Government assured the Court that there are no photographs in its evidence for trial showing Defendant holding a gun and asserted that the photographs it sought to admit were in the nature of those included in docket entry 89-3. The Court relies on the Government's representation as officers of the Court and notes that the Court may reach a different result on the Fifth Amendment issue and certainly under Rule 403 of the Federal Rules of Evidence, if the Government sought to introduce photographs where *law enforcement* posed Defendant holding a firearm. This of course does not apply to the photographs seized from Defendant's phone, where law enforcement are alleged to have located the photographs but not to have played any role in the creation of the photographs.

6

arms for purposes of a photograph is not testimonial because it does not reveal "the contents of [the defendant's] own mind" which is what is necessary to "implicate[] the Self-Incrimination Clause." *Doe v. United States*, 487 U.S. 201, 211 (1988). As the Supreme Court has emphasized, "[t]he act of exhibiting [certain] physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief." *Hubbell*, 530 U.S. at 35. More specifically, the Supreme Court has recognized that a "mere handwriting exemplar, in contrast to what is written, like the voice or body itself, is an identifying physical characteristic outside [Fifth Amendment] protection." *Gilbert*, 388 U.S. at 266.

In short, the Supreme Court has recognized that "the distinction which has emerged, often expressed in different ways, is that the [Fifth Amendment] privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber v. California*, 384 U.S. 757, 764 (1966). Thus, as with any tattoo, voice, or other identifying physical characteristic, it is Defendant's body that is the source of the evidence and there is no Fifth Amendment violation.

### C.    *Rule 403*

At the hearing, the Court raised its concerns, based on the statements in Defendant's Motion, that photographs of Defendant holding a firearm at the direction of law enforcement would be unduly prejudicial. *See* Fed. R. Evid. 403. The Government assured the Court that no such photographs were part of its evidence and directed the Court to the photographs included in docket entry 89-3. At that point, the Court raised another Rule 403 concern: Defendant was photographed in his prison jumpsuit. Courts, including the Supreme Court, have regularly recognized the "potential effects of presenting an accused before the jury in prison attire" and the "unacceptable risk" of "impermissible factors coming into play." *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976). Accordingly, the Court directs the Government to redact or crop the photographs that it

7

intends to seek to admit as evidence at trial. The Court further warns the Government that the Court will entertain a Rule 403 objection to the admission of such photographs, if it is clear from the photographs that Defendant is in prison attire.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Suppress (Dkt. 68) is DENIED; and it is

FURTHER ORDERED that the Government is DIRECTED to redact or crop the photographs of Defendant, taken at the direction of law enforcement as a result of the Warrant (a selection of which were included at docket entry 89-3) to ensure that such photographs do not reveal Defendant in his prison jumpsuit.

It is SO ORDERED.

Alexandria, Virginia
May 1, 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge

8