IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:25-cr-307 (RDA) |
| | ) | |
| SOHAIB AKHTER, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Government's Motion in Limine to Admit Defendant's Statement of Facts. Dkt. 80. Considering the Motion and Defendant Sohaib Akhter's Opposition (Dkt. 91), as well as the arguments raised at the hearing held before this Court on April 29, 2026, this Court GRANTS the Motion for the reasons that follow.

### I. BACKGROUND

A grand jury returned an Indictment against Defendant and his brother, Codefendant Muneeb Akhter, on November 13, 2025. Dkt. 1. An arraignment was held on December 10, 2025, and trial was set for February 2, 2026. Dkt. 20.

On January 15, 2026, a grand jury returned a Superseding Indictment. Dkt. 41. The Superseding Indictment charges Defendant with: (i) conspiracy, in violation of 18 U.S.C. § 371 (Count 1); (ii) password trafficking, in violation of 18 U.S.C. § 1030(a)(6) (Count 7); (iii) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count 8); and (iv) witness tampering, in violation of 18 U.S.C. § 1512(b)(1) (Count 13). Dkt. 41. On January 21, 2026, Defendant was arraigned on the Superseding Indictment, and trial was continued to May 4, 2026. Dkt. 49.

On February 25, 2026, the Government sent Defendant a formal plea offer.  Dkt. 80 at 1. On Friday, March 6, 2026, Defendant requested to see a draft statement of facts.  *Id.*  The Government provided such draft on Sunday, March 8, 2026.  *Id.*  Thereafter, defense counsel requested to see a proposed plea agreement, which the Government provided the same day.  *Id.*

On April 15, 2026, defense counsel informed the Government that Defendant was willing to enter a plea if a specific change was made to a quote included in the draft statement of facts.  *Id.* The Government agreed.  *Id.*  That same day, the parties were before the Court on several motions filed by Defendant and his brother.  Dkt. 72.  During the course of the hearing, counsel for Codefendant Muneeb Akhter indicated that the case may be able to be resolved if Defendant and his Codefendant were permitted to speak to each other; the Court therefore took a recess.  *Id.* Following the return from the recess, Defendant and his Codefendant both indicated that they wanted to change their pleas.  *Id.*  Both defendants had signed a plea agreement and a statement of facts which were handed up to the Courtroom Deputy and stamped.  *Id.*  The parties requested that the Court conduct the Rule 11 plea colloquy with Defendant's brother first; the Court did so and thereafter the Court accepted the Codefendant's guilty plea.  *Id.*  The Court then began a colloquy with Defendant, during which Defendant was placed under oath, and made it a substantial way through the colloquy before Defendant determined that he did not want to proceed further.  *Id.* The Plea Agreement and Statement of Facts pertaining to Defendant were returned to the Government.  *Id.*

In pertinent part, during the plea colloquy, Defendant answered affirmatively to the following questions: (i) are you entirely satisfied with the services of your attorney; (ii) do you understand the elements that the Government would have to prove if the case proceeded to trial; (iii) do you understand the maximum punishment you face; (iv) have you discussed with your lawyer whether to plead guilty; and (v) have you decided for yourself to enter a plea of guilty.

Dkt. 80-3 at 47–52. When asked whether he was entering the guilty plea of his own choosing, Defendant answered "no" and, after consultation with defense counsel, determined that he did not wish to change his plea. *Id.* at 52.

As is the typical practice in this District, the Plea Agreement includes a provision relating to the effect of the Plea Agreement and related Statement of Facts—if Defendant violates his obligation to enter the plea at the date and time set by the Court, then:

> Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the Statement of Facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law.

Dkt. 80-1 ¶ 14. In signing the Plea Agreement, Defendant stated:

> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal Superseding Indictment. Further, I fully understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

*Id.* at 12. Defense counsel made similar representations regarding his review of Defendant's rights with Defendant, his review of the Plea Agreement with Defendant, and his view that Defendant's decision to enter the Plea Agreement was knowing and voluntary. *Id.* Furthermore, the Plea Agreement notes: "This Plea Agreement is effective when signed by the defendant, the defendant's attorney, and an attorney for the United States." *Id.* ¶ 14.

On April 17, 2026, Defendant filed a motion to proceed *pro se* and relegate counsel to a standby role. Dkt. 78.

3

On April 18, 2026, the Government filed its Motion citing various cases from the Supreme Court, the Courts of Appeals, and this District permitting the admission of a Defendant's Statement of Facts in a subsequent trial against him. Dkt. 80. The Government also attached the Plea Agreement, Statement of Facts, and a transcript of the April 15, 2026 hearing to the Motion. Dkts. 80-1, 80-2, 80-3.

On April 20, 2026, before the hearing on Defendant's motion to proceed *pro se*, Defendant, through counsel, filed an opposition to the Government's Motion. Dkt. 91. The Opposition argues that the cases cited by the Government are distinguishable, and that Defendant did not breach the Plea Agreement, because his plea was never accepted by the Court. *Id.* Defendant further argues that, even if he did breach the Plea Agreement, such breach was not material such that paragraph 14 should be enforced and the Statement of Facts admitted. *Id.*

On April 22, 2026, the Court undertook a *Faretta* inquiry with Defendant and determined that Defendant was knowingly and voluntarily waiving his right to be represented by counsel. Dkt. 98.

On April 29, 2026, the Court held a hearing on the Motion at which Defendant, proceeding *pro se,* argued against the Motion. With respect to the admissibility of the Statement of Facts, Defendant argued that the Federal Rules precluded its admission because it was part of plea negotiations. He further argued that the Statement of Facts should not be admitted because he felt coerced and/or under duress, but, when pressed by the Court regarding those circumstances, Defendant could not articulate any basis for such feelings other than his observance of his brother's plea colloquy.[1]

---

[1] At the hearing, the Court again inquired whether Defendant still wanted to proceed *pro se*, and Defendant confirmed that he did.

## II.  ANALYSIS

Federal Rule of Evidence 11(f) and Federal Rule of Evidence 410 govern admissibility of a plea, plea discussions, and related statements.[2]  As the Supreme Court has recognized, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement rules is valid and enforceable."  *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995).  This is so even if the guilty plea is ultimately not entered or later withdrawn.  *See United States v. Scruggs*, 356 F.3d 539, 546 (4th Cir. 2004) ("Since we find that cancelling an agreement because of a breach, while simultaneously allowing the injured party to retain a remedy for breach under that agreement, is not in any way inconsistent with governing contract law principles, we hold that the district court appropriately enforced paragraph 12."); *United States v. Morsley*, 64 F.3d 907, 918 (4th Cir. 1995) ("Because McKoy does not contend that he was unaware of this provision or that he was coerced into signing the plea agreement, he has waived his right to challenge the admissibility of his statements."); *United States v. Alazzam*, 2009 WL 3245392, at *4 (E.D. Va. Sept. 29, 2009) ("Thus, based on a plain reading of the plea agreement, the Court finds that Alazzam agreed to waive his rights to exclude the statement of facts in a subsequent trial and the Government may use the signed Statement of Facts at trial.").  Thus, to the extent that the Plea Agreement was knowingly and voluntarily entered, Defendant's reliance on Rule 11(f) and Rule 410 is inapposite, where he explicitly waived the protection of those provisions.  Dkt. 80-1 ¶ 14.  Accordingly, the Court first addresses voluntariness, before addressing whether there was a material breach of the Plea Agreement.

---

[2] Such statements are otherwise admissible against Defendant as admissions of a party opponent under Federal Rule of Evidence 801(d)(2).

A.    *Voluntariness*

Here, it is apparent that the Plea Agreement was entered into voluntarily.  As an initial matter, Defendant professed in the Plea Agreement itself that his signature to the agreement was knowing and voluntary.  Dkt. 80-1 at 12 ("I understand this agreement and voluntarily agree to it.").  Defense counsel agreed.  *Id.* ("To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.").  They each agreed that Defendant had reviewed every part of the agreement with his attorney.  *Id.* ("I have read this Plea Agreement and carefully reviewed every part of it with my attorney."); *id.* ("I have carefully reviewed every part of this Plea Agreement with the defendant.").  Furthermore, during the plea colloquy, Defendant attested that he was satisfied with the services of his counsel.  Dkt. 80-3 at 47 ("The Court: Are you entirely satisfied with the services of your attorney?  S. Akhter: Yes.").  In Defendant's Opposition, Defendant does not argue that the Plea Agreement was entered into unknowingly or involuntarily.  *See generally* Dkt. 91.  And, during oral argument, neither did Defendant.  Indeed, the alleged coercion primarily relied upon by Defendant was his feelings after watching his brother/Codefendant enter his guilty plea.  But Muneeb Akhter's plea colloquy was conducted *after both defendants had already signed the Plea Agreements*.[3]  Thus, any coercion Defendant experienced while watching his brother enter his guilty plea could not have impacted his own decision to enter the Plea Agreement before that colloquy ever took place.  Accordingly, Defendant has failed to provide any affirmative indication that his plea was entered into involuntarily in this regard.

---

[3] Although no formal transcript of the hearing has been produced, the Court reviewed a rough transcript of the hearing.  During the hearing, Defendant stated that it was, during the time "between when I signed it and when my brother was doing his colloquy, I felt like I was pressured and I stated as such during the colloquy."  This again suggests that Defendant did not feel coerced at the time he signed the Plea Agreement but had some buyer's remorse afterwards that led him to feel as though he had been coerced.

Defendant made fleeting references to feeling coerced by his conversations with his brother. But, as the Court noted during the hearing, Defendant *specifically asked* to be able to speak with his brother. *See* Dkt. 61 (Defendant and his brother "jointly" moved to permit "reasonable contact between the Akhter brothers"); Dkt. 72; Dkt. 80-3 (counsel for Muneeb Akhter arguing "it would be helpful to all parties if the two of them could meet briefly to discuss an important matter, at least here in the courtroom"). Moreover, courts have specifically rejected arguments that influence or pressure by friends of family render a plea involuntary. *See Patel v. United States*, 252 F. App'x 970, 976 (11th Cir. 2007) (recognizing "unavoidable influence or pressure from sources such as codefendants, friends or family does not make a plea involuntary"); *United States v. Ricketts*, 2025 WL 1065242, at *2 (3d Cir. Apr. 9, 2025) (holding that "strong persuasion" from family members does not render a plea involuntary); *United States v. Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011) (affirming district court denial of motion to withdraw guilty plea where defendant argued that he "abdicat[ed] his will" to family members"); *United States v. Gasaway*, 437 F. App'x 428, 435 (6th Cir. 2011) ("The family pressure that Gasaway alleges here is not the type of coercion that makes a defendant's acceptance of a guilty plea involuntary."). Here, Defendant's references to the "coercion" he faced are vague and non-specific. He does not allege that his brother threatened him and could not provide the Court with an explanation why his conversations with his brother rendered his plea involuntary. Accordingly, Defendant has failed to provide any affirmative indication that his plea was entered into involuntarily in this regard.

Defendant also made a vague reference to his plea being "tethered" to his brother's plea and that being coercive. Again, that is belied by Defendant's statements pursuant to his signature on the Plea Agreement itself. Moreover, it is unclear as to what Defendant referred as he did not elaborate further, and Defendant did not specifically assert that it was *the Government* who

"tethered" Defendant's guilty plea to his brother's plea. Nonetheless, the Court assumes that Defendant intended to suggest that the Government was requiring *both* defendants to plead guilty in order for one defendant to plead guilty. As an initial matter, the Plea Agreement makes no references to such a requirement. And, in any event, Courts of Appeals have rejected similar claims that a Defendant's plea was involuntary because he entered it to protect a family member.[4] Accordingly, Defendant has failed to provide any affirmative indication that his plea was entered into involuntarily in this regard.

At the hearing, Defendant also indicated that the attorneys "were really trying to get us to sign" and that he "was very pressured." But this is belied by Defendant's statement under oath that he was entirely satisfied with the services of his counsel. Dkt. 80-3 at 47; *see United States v. Brandveen*, 492 F. App'x 424, 425 (4th Cir. 2012) (refusing to look beyond a defendant's attestations during a plea colloquy, which are presumed to be truthful). Moreover, the signed Plea Agreement also provides that he "is satisfied that the defendant's attorney has rendered effective assistance" and that his signature is voluntary. Dkt. 80-1 ¶ 4; *id.* at 12. Defendant again reported no specifics about his attorney allegedly made him feel pressured. Discussions about what may

---

[4] *See, e.g.*, *Mosier v. Murphy*, 790 F.2d 62, 66 (10th Cir.), *cert. denied,* 479 U.S. 988 (1986) (defendant's guilty plea entered to protect his wife and mother-in-law from prosecution for murder held voluntary because "we must respect the defendant's choice and '[i]f [an accused] elects to sacrifice himself for such motives, that is his choice'"); !*Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (threat to prosecute validly indicted pregnant woman did not unconstitutionally coerce her husband to plea); *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984) ("[Defendant's] pleas would not be involuntary by reason of his desire to extricate his relatives from such a possible good faith prosecution."); *United States v. Marquez*, 909 F.2d 738, 741-42 (2d Cir. 1990) (guilty plea was not involuntary even though defendant's wife's ability to plead guilty was contingent on defendant's pleading guilty), *cert. denied,* 498 U.S. 1084 (1991); *United States v. Carasis*, 863 F.2d 615, 616 (8th Cir. 1988) (guilty pleas were not coerced where plea agreements were contingent on all defendants pleading guilty); *United States v. Bartoli*, 572 F.2d 188, 189 (8th Cir.) (guilty plea was not coerced where entered by defendant pursuant to condition that indictment against defendant's father be dismissed), *cert. denied,* 438 U.S. 905 (1978).

happen if a defendant does not plead guilty, a defendant's sentencing exposure if he loses at trial, and other advice does not constitute pressure but is instead "competent legal advice." *United States v. Swinney*, 2015 WL 9593651, at *7 (E.D. Va. Dec. 31, 2015). As the Fourth Circuit has recognized, counsel's advice regarding the wisdom of entering a plea agreement combined with a defendant's agreement that he was "entirely satisfied" with his counsel belies any claim that a defendant was coerced by his counsel. *United States v. Craig*, 985 F.2d 175, 180 (4th Cir. 1993). This is so even if counsel's advice is "blunt" or a "negative assessment" of the chances at trial. *United States v. Addae*, 2019 WL 6337414, at *5 (E.D. Va. Nov. 26, 2019) (citing *United States v. Gil-Guerrero*, 759 F. App'x 12, 17 (2d Cir. 2018)). Here, it is entirely unclear what about Defendant's conversation with counsel is alleged to have made him feel pressured and, in any event, Defendant swore under oath that he was satisfied with the services of his counsel. Accordingly, Defendant has failed to provide any affirmative indication that his plea was entered into involuntarily in this regard.

In short, Defendant has provided no basis from which the Court could determine that Defendant's signature on and agreement to the Plea Agreement was involuntary. The Plea Agreement is thus enforceable, and the Court must determine whether Defendant committed a material breach. *Mezzanatto*, 513 U.S. at 210.

### B.    *Breach*

Defendant's argument that he is not in breach of the Plea Agreement is mainly premised on his Opposition brief, filed by counsel. Dkt. 91. In his Opposition, Defendant argues that he is not in breach because his plea was never accepted by the Court. Defendant is mistaken. As made clear by the Plea Agreement, the "Plea Agreement is effective *when signed* by the defendant, the defendant's attorney, and an attorney for the United States." Dkt. 80-1 ¶ 14 (emphasis added). Here, all necessary signatures are present. *Id*. at 11-12. Furthermore, the Plea Agreement provides

9

that the Rule 11(f) and Rule 410 waiver apply "*[if] the defendant withdraws* from this agreement." *Id.* ¶ 14 (emphasis added). District judges in this District, analyzing similar provisions in a plea agreement, have found that a defendant's withdrawal of a plea constitutes a breach of the plea. *See Alazzam*, 2009 WL 3245392, at *3-4 (finding "no distinction between a withdrawal by Defendant and a court-condoned withdrawal"). Moreover, even where there is a short time period between the signing of a plea agreement and the defendant's change of heart, courts recognize that the withdrawal is a material breach of the plea agreement. *See United States v. El-Amin*, 268 F. Supp. 2d 639, 642 (E.D. Va. 2003) (finding that the defendant "materially breached this Plea Agreement" when he changed his mind the day after signing it). A finding of material breach is commonsense where the agreement to plead guilty is a material term of the agreement and Defendant unilaterally decides to withdraw his guilty plea thereby depriving the Government of the benefit of its bargain.[5] Accordingly, the Court finds that: (i) the Plea Agreement and specifically the provisions in Paragraph 14 are valid and enforceable; (ii) Defendant materially breached the Plea Agreement; and (iii) the Statement of Facts is admissible pursuant to Paragraph 14 of the Plea Agreement.

Having determined that the Statement of Facts is admissible, the Court must still determine in what form it should be presented. During the hearing, the Government provided for the Court's review a redacted version of the Statement of Facts which removed references to the Plea Agreement or a plea. Moreover, the Government proffered that its case agent would not reference the Plea Agreement, any plea discussions, or the unfinished plea colloquy. The Court accepts the

---

[5] In *United States v. Chisholm*, 2015 WL 13309436 (E.D. Va. July 20, 2015), a district judge in this District found that a defendant had violated his plea agreement and that a similar waiver of Rules 11(f) and 410 was valid, but, for reasons that are unclear to the Court, declined to enforce the waiver and provide the Government the benefit of its bargain. *Id.* at *3. The Court is not persuaded and, as discussed *infra*, is taking other steps in terms of redactions and limitations on the Government's references to the plea to protect Defendant's rights in the interest of justice. Accordingly, the Court declines to follow *Chisholm* and finds the *Alazzam* case more persuasive.

redactions to the Statement of Facts proffered by the Government and will hold the Government to the proffer. Thus, the Government and its agents are directed not to reference the plea or Plea Agreement unless Defendant opens the door to such discussions.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Government's Motion in Limine to Admit Defendant's Statement of Facts (Dkt. 80) is GRANTED; and it is

FURTHER ORDERED that the Government is DIRECTED to use only the redacted version of the Statement of Facts (as presented at the April 29, 2022 hearing); and it is

FURTHER ORDERED that Government counsel and Government witnesses are DIRECTED not to make references to the Plea Agreement, plea colloquy, or the plea negotiations unless and until Defendant has opened the door. If the Government believes that Defendant has opened the door, the Government must first seek permission from the Court at sidebar before any references the plea or Plea Agreement are made.

It is SO ORDERED.

Alexandria, Virginia
May 1, 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

11