IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:25-cr-307 (RDA) |
| | ) | |
| SOHAIB AKHTER, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Sohaib Akhter's ("Defendant") Motion, by counsel, for a New Trial (Dkt. 140) (the "First Motion")[1] and Defendant's Motion, filed *pro se*, to Amend New Trial Claim (Dkt. 169) (the "*Pro Se* Motion"). Considering the Motions together with the Government's Oppositions (Dkt. 146, 174) and Defendant's Reply (Dkt. 174), this Court DENIES the Motions for the reasons that follow.

## I. BACKGROUND

Defendant Sohaib Akhter was charged by Superseding Indictment with (i) Conspiracy to Damage a Protected Computer and to Destroy, in violation of 18 U.S.C. § 371; (ii) Computer Fraud and Abuse – Password Trafficking, in violation of 18 U.S.C. § 1030(a)(6) and (c)(2)(A); (iii) Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1); and (iv) Witness Tampering, in violation of 18 U.S.C. § 1512(b)(1). Dkt. 41. Also charged in the Superseding Indictment was Co-Defendant Muneeb Akhter. *Id.*

On April 13, 2026, the Government provided its proposed jury instructions to Defendant's counsel via email. Dkt. 140 ¶ 8. On April 16, 2026, Defendant, by counsel, provided his proposed jury instructions to the Government via email. *Id.* On April 16, 2026, the Government and defense

---

[1] The Court grants the outstanding motion for extension of time (Dkt. 149) to which there is no objection (Dkt. 151).

counsel conferred regarding each party's proposed jury instructions. *Id.* ¶ 9. Among the disputed jury instructions was the Government's Instruction No. QQ, Aiding & Abetting – Explained. *Id.*

On April 17, 2026, Defendant filed his Joint Motion to Proceed *Pro Se*, and to Relegate His Appointed Counsel to Standby Counsel (the "Joint Motion"). Dkt. 78. On April 20, 2026, defense counsel filed Defendant's Objections and Argument Regarding Disputed Jury Instructions. Dkt. 88. On April 20, 2026, the Government filed United States' Objections to Defendant's Proposed Jury Instructions. Dkt. 92.

On April 22, 2026, the parties appeared before the Court on Defendant's Motion to Proceed *Pro Se*. Dkt. 98. The Court held a hearing, conducted a *Faretta* colloquy, and determined that Defendant's motion to proceed *pro se* was intelligently, voluntarily, and knowingly made. *Id.* Accordingly, after advising Defendant regarding the role of standby counsel, the Court granted Defendant's Joint Motion, permitting Defendant to proceed *pro se* and his defense counsel to continue as standby counsel.[2] *Id.*

On April 29, 2026, at the pre-trial hearing, pre-trial motions (Dkts. 68, 69, 80, 101, 106) were heard and the Court took the proposed and disputed instructions under advisement. Dkt. 113. The Court does not recall that Defendant presented any oral argument at the hearing about his proposed jury instructions or any objections to the Government's proposed instructions.

On May 4, 2026, Defendant proceeded to trial *pro se*, with defense counsel now available as his standby counsel. Dkt. 126. On May 6, 2026, after the close of evidence, the Court held a

---

[2] At the April 22, 2026 hearing, the Court specifically asked whether Defendant understood that standby counsel does not function in the same way as defense counsel. Dkt. 98. As the Fourth Circuit has recognized, a district court has "broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." *United States v. Lawrence*, 161 F.3d 250, 253 (4th Cir. 1998). And certainly, "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014).

charging conference. Dkt. 131. During the charging conference, the Court specifically addressed proposed Instruction No. QQ. Dkt. 167 at 15. The Court stated: "What I'm going to do on that, Mr. Akhter, with the assistance of Mr. Park, I'm going to let you basically take a look at how the evidence is presented as we continue. And if some of your factual bases support the additional language that you suggest, the Court will consider that." *Id.* at 15:17-25. After the close of evidence, Defendant did not re-raise the matter of Instruction No. QQ as directed by the Court. Accordingly, the instructions were read to the jury, including the Government's proposed Instruction No. QQ.

After the jury retired to deliberate, Defendant made an oral motion to request counsel be reappointed to represent him. *Id.* at 163:24-25. The Court granted the request. *Id.* at 164:1-165:2. After being reappointed, defense counsel again argued whether the language in Instruction No. QQ was appropriate. *Id.* at 165:5-166:13. The Court informed counsel that there had been an opportunity to object to the instructions, that Defendant had not argued the issue, and that it was therefore too late to do so now; however, the Court offered that, if the jury had a question regarding that instruction, the Court may expand on the instruction with the language proffered by defense counsel. *Id.* at 166:14-25.

The jury did not have a question regarding that instruction. On May 7, 2026, the jury returned a verdict of guilty as to Count 1 (Conspiracy), Count 7 (Password Trafficking), and Count 8 (Possession of Firearm by Prohibited Person). Dkt. 134. The jury found Defendant not guilty of Count 13 (Witness Tampering). *Id.* The verdict form did not mention aiding and abetting liability other than to reference 18 U.S.C. § 2. *See id.*

On May 21, 2026, Defendant, by counsel, filed the First Motion. Dkt. 140. On June 4, 2026, the Government responded in Opposition. Dkt. 146.

On August 26, 2026, Defendant, acting *pro se*, filed the *Pro Se* Motion. Dkt. 169. On September 9, 2026, the Government responded in Opposition. Dkt. 174. On September 30, 2026, Defendant, by counsel, filed a Reply whereby counsel adopted the *Pro Se* Motion. Dkt. 187.

## II. STANDARD OF REVIEW

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In this respect, the Fourth Circuit has instructed that "[a] trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstances when the evidence weighs heavily against it." *United States v. Williams*, 2019 WL 3226483, at *3 (4th Cir. 2019). A new trial should be granted where "it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006) (citing 3 Charles A. Wright, Nancy J. King, Susan R. Klein & Sarah N. Welling, Federal Practice and Procedure §§ 553-556).

## III. ANALYSIS

The two Motions presented by Defendant attack different issues related to his convictions. On the one hand, Defendant's First Motion challenges a discrete issue related to jury instructions. Dkt. 140. On the other, Defendant's *Pro Se* Motion challenges the constitutionality of his conviction pursuant to Section 922(g). Dkt. 169. Although there are issues relating to the timeliness and appropriateness of the *Pro Se* Motion, the Court will address each Motion in turn.

### A. First Motion

The Court must first determine whether Defendant has waived the specific objection that he now raises. Because Defendant failed to timely raise his specific objection, the Court had no opportunity to address it before instructing the jury and the argument is therefore waived.

Federal Rule of Criminal Procedure 30 provides that: "A party with objections to any portion of the jury instructions must inform the court of the specific objection and the basis for the objection before the jury retires." Fed. R. Crim. P. 30. Thus, the Court begins with an examination of Defendant's original objection. Defendant's Objections and Arguments Regarding Disputed Jury Instructions stated, "Defendant proposes revising this instruction to include language concerning conspiracy to aid and abet, which more properly reflects the charges in the Superseding Indictment." Dkt. 88. But this objection is substantively different from the objection that Defendant *now* attempts to raise, which more broadly asserts that "Instruction No. QQ inadequately identifies the elements of the offense of conspiring to aid and abet, and thereby constructively alters the Indictment for conspiracy to aid and abet." Dkt. 140 at 7. As Justice Samuel Alito has recognized, "[a]n objection cannot be vague or open-ended," and "[i]t must *specifically* identify the alleged error." *Elonis v. United States*, 575 U.S. 723, 749 (2015) (Alito, J. concurring in part) (emphasis in original). Here, Defendant failed to do so.

Moreover, Defendant failed to renew *any* objection to the instruction, despite the explicit opportunity to do so. Dkt. 167 at 15:17-25 (an invitation to Defendant and standby counsel that, "if some of your factual bases support the additional language that you suggest, the Court will consider that"). But Defendant did not re-raise the matter before it went to the jury, and he certainly never informed the Court of the basis for his objection now. As Courts of Appeals recognize, standby counsel's objection *after* the jury had been instructed does not satisfy Rule 30. *See United States v. Roberson*, 459 F.3d 39, 45 (1st Cir. 2006) ("But the *case* had already gone to the jury. Roberson's renewed objection, registered after the jury had begun its deliberations, came too late to satisfy Rule 30(d)." (emphasis in original)).

Regardless of the lack of timeliness of the objection to the jury instruction, the Court analyzes Defendant's argument pursuant to Federal Rule of Criminal Procedure 33, which

provides that a district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Fourth Circuit has held that motions for a new trial are "highly disfavored" and should be "grant[ed] only 'sparingly.'" *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)). Courts should not grant a new trial unless "it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006). With respect to jury instructions, a district court has an obligation to give instructions to the jury that "fairly state[ ] the controlling law." *United States v. Cobb,* 905 F.2d 784, 789 (4th Cir.1990). Thus, the Court must ask whether, when viewed holistically and in context, the instructions "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011).

Defendant attacks only Instruction No. QQ, in which the Court explained aiding and abetting, and argues that it influenced his conviction with respect to Count 1. *See* Dkt. 140. In attacking his conviction and the instruction in this regard, Defendant argues that Instruction No. QQ inadequately identified "the elements of the offense of conspiring to aid and abet, and thereby constructively alters the Indictment for *conspiracy* to aid and abet." *Id.* at 7 (emphasis in original). Defendant asserts that his proposed instruction modified "the government's Instruction No. QQ by adding the elements of conspiracy to the government's standard Aiding and Abetting Instruction." *Id.* at 8. But, as the Fourth Circuit has long recognized, an indictment need not designate a defendant as an aider and abettor because "all indictments are read as if the alternative provided by the aiding and abetting statute, 18 U.S.C. § 2, is included therein." *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975). This decision remains good law within this Circuit and other Circuits. *See United States v. Fitzgerald*, 514 F. Supp. 3d 721, 770 (D. Md. 2021) ("Importantly, aiding and abetting is not an independent offense, and the government is not

required to explicitly charge aiding and abetting so long as the underlying offense is charged."); *see also United States v. Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006); *United States v. Dodd*, 43 F.3d 759, 762-63 (1st Cir. 1995) (recognizing that aiding and abetting is implicit in all indictments for substantive offenses and therefore need not be specifically pleaded); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) ("[T]he provision of 18 U.S.C. § 2 can be read into an indictment which specifically charges only a substantive offense.").

Instruction No. QQ made clear that a person may violate the law – even though he or she does not personally do each and every act constituting the offense – if that person "aided and abetted" the commission of the offense. It further set forth the language of 18 U.S.C. § 2 and the elements that the Government must prove in that regard. Defendant does not argue that those elements are incorrect.[3] Thus, it does not matter that Defendant was "not charged with aiding and abetting" and Instruction No. QQ did not expand the charges alleged in the indictment. Dkt. 140 at 8. Rather, Instruction No. QQ makes clear the liability that is always present, whether or not 18 U.S.C. § 2 is actually charged. *See United States v. Holleman*, 575 F.2d 139, 144 (7th Cir. 1978). ("If the trial court determines that the evidence warrants an aiding and abetting instruction, it is immaterial, although preferable, whether 18 U.S.C. § 2 is actually charged in the indictment. An aider is punishable as a principal."); *see also Levine v. United States*, 430 F.2d 641, 643 (7th Cir. 1970) (listing cases from the Fourth, Fifth, Ninth, and Tenth Circuits supporting the proposition that 18 U.S.C. § 2 need not be explicitly pled to properly give rise to an aiding and abetting instruction).

---

[3] Moreover, Instruction No. QQ did not omit the crime of conspiracy to permit the jury to find Defendant guilty of the underlying object offenses. Instead, it appropriately focused on "the crime charged in Count One." Instruction No. QQ did not invite the jury to find Defendant guilty of Count One merely by finding he aids, abets, counsels, commands, induces, or procures the commission of the objects. Nor did the Government rely on an aiding and abetting theory of liability in its case presentation or in closing argument.

In short, Defendant has failed to demonstrate that the Court erred when it provided Instruction No. QQ. Accordingly, Defendant's First Motion will be denied.

B. The *Pro Se* Motion

After defense counsel filed the First Motion, Defendant – acting *pro se* – filed the *Pro Se* Motion (Dkt. 169) challenging Count 8 based upon the Supreme Court's recent holding in *United States v. Hemani*, 608 U.S. 772 (2026). The decision in *Hemani* was issued on June 18, 2026. *Id.* Before addressing the merits of the *Pro Se* Motion, the Court must address the Government's arguments that the *Pro Se* Motion is improper and untimely.

Defendant filed the *Pro Se* Motion at a time when he was represented by counsel, and it is well-settled that a defendant cannot file motions *pro se* while he retains the benefits of appointed counsel. *See United States v. Miller*, No. 1:17-cr-213, Order, dated November 13, 2019 (E.D. Va.) (striking pleadings filed by *pro se* defendant where he was represented by counsel, including a motion for a new trial); *see also United States v. Carranza*, 645 F. App'x 297, 300 (4th Cir. 2016) (per curiam) ("A criminal defendant has no statutory or constitutional right to proceed pro se while simultaneously being represented by counsel."). The filing of the *Pro Se* Motion was therefore improper; however, counsel has now adopted the *Pro Se* Motion and filed the Reply in support of it. Dkt. 187. The Court therefore finds that, at this point, the original *pro se* filing of the Motion is not a basis for denying the Motion.

The Court then turns to the timeliness of the *Pro Se* Motion. A motion for a new trial *must* be filed within fourteen days after the verdict. *See* Fed. R. Crim. P. 33(b). Indeed, Rule 33 is explicit: "Any motion for a new trial grounded on any reason *other than newly discovered evidence* must be filed within 14 days after the verdict or finding of guilty." *Id.* (emphasis added). Here, the verdict was entered on May 7, 2026 (Dkt. 134), but the *Pro Se* Motion was not filed until August 26, 2026 (Dkt. 169) – 111 days after the verdict. Moreover, the *Pro Se* Motion does not

rest on newly discovered evidence, but an alleged change in the law. *Id.* Courts of Appeals have recognized: "It is nose-on-the-face plain that a change in the law does not amount to newly discovered evidence within the purview of Rule 33." *United States v. Peake*, 874 F.3d 65, 72-73 (1st Cir. 2017); *see also United States v. King*, 735 F.3d 1098, 1108-09 (9th Cir. 2013). Similarly, the Fourth Circuit, in *United States v. Council*, 77 F.4th 240 (4th Cir. 2023), affirmed the district court where it denied a Rule 33 motion as untimely, even though the motion was based on a newly enacted statute. *Id.* at 264. Moreover, even if the deadline for filing a new motion ran from the issuance of the Supreme Court's decision in *Hemani*, Defendant's *Pro Se* Motion here would still be well beyond that timeframe. Accordingly, Defendant's *Pro Se* Motion is untimely.

Even so, the Court will analyze the substance of Defendant's *Pro Se* Motion. In the *Pro Se* Motion, Defendant challenges his conviction on Count 8 for a violation of 18 U.S.C. § 922(g)(1), that is a felon in possession of a firearm, based on the Supreme Court's decision in *Hemani*. Dkt. 169 at 3. In *Hemani*, the Supreme Court analyzed Section 922(g)(3)'s prohibition on the possession of a firearm by persons who are unlawful users of or addicted to controlled substances. *See* 608 U.S. at 777. Characterizing its decision in the case as a "narrow one," the Supreme Court held that "we cannot say [that the Government] has carried its conceded burden of showing its prosecution of Mr. Hemani complies with the Second Amendment." *Id.* at 794-95. In so holding, the Supreme Court took great pains to indicate that, "[c]ertain other provisions of § 922, such as subsections (g)(1) (disarming convicted felons) . . . , involve some manner of pre-deprivation process" and therefore "differ from subsection (g)(3) and 'nothing in our opinion should be taken to cast doubt' on them." *Id.* at 791 n.6. Nor does the *Hemani* decision suggest "that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* (citing *United States v. Rahimi*, 602 U.S. 680, 698, (2024)). In rendering its decision, the Supreme Court

further emphasized: "We do not address 18 U.S.C. § 922(g)(1)'s provision disarming individuals convicted of felonies (often including drug-related ones)." *Id.* at 794. To emphasize this fact even further, Justice Alito, in a concurrence joined by Justice Kagan, reiterated: "I also agree that nothing in the opinion of the Court should be read to cast doubt on the constitutionality of other provisions of § 922(g), such as §§ 922(g)(1) and (4), . . . which we have repeatedly said are 'presumptively lawful.'" *Id.* at 806 (Alito, J., concurring).

The Supreme Court's pains to distinguish Section 922(g)(1) and its "presumptively lawful status," is consistent with Fourth Circuit precedent regarding Section 922(g)(1). The Fourth Circuit has rejected both facial and constitutional challenges to 18 U.S.C. § 922(g)(1). *See United States v. Jacobs*, 166 F.4th 395, 399 (4th Cir. 2026) (recognizing that prior decisions upheld the "facial constitutionality of § 922(g)(1)" and upheld the statute as against an as-applied challenge "without regard to the specific conviction that establish[es] [one's] inability to lawfully possess firearms") (citing *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024); *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024)).[4] Following the *Hemani* decision, Courts of Appeals have rejected the very argument that Defendant seeks to advance here. *See United States v. Grant*, 2026 WL 1860000, at *1 n.2 (2d Cir. June 29, 2026) (holding that the *Hemani* decision does not abrogate prior decision that Section 922(g)(1) not subject to as-applied challenges); *United States v. Torres*, 188 F.4th 1098, 1101 (8th Cir. 2026) (holding that "circuit precedent" regarding as-

[4] Indeed, prior to the *Hemani* decision, five Circuits, including the Fourth Circuit, had upheld the categorical application of Section 922(g) to all felons. *See Hunt*, 123 F.4th at 707-08 (rejecting an as-applied challenge on a categorical basis); *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) (same); *Vincent v. Bondi*, 127 F.4th 1263, 1265-66 (10th Cir. 2025); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024); *United States v. Duarte*, 137 F.4th 743, 747 (9th Cir. 2025) ("Today, we align ourselves with the Fourth, Fifth, Eighth, Tenth, and Eleventh Circuits and hold that § 922(g)(1) is not unconstitutional as applied to non-violent felons like Steven Duarte."); *Zherka v. Bondi*, 140 F.4th 68, 91-96 (2d Cir. 2025) (holding that Section 922(g)(1) does not violate the Second Amendment and is not subject to as-applied challenges).

applied challenges to Section 922(g)(1) was "undisturbed by the Supreme Court's recent decision in *United States v. Hemani*"); *United States v. Parr*, 2026 WL 2858728, at *3 (11th Cir. Sept. 23, 2026) (holding that *Hemani* did not abrogate prior precedent and summarily affirming). Thus, the Supreme Court's *Hemani* decision is consistent with the Fourth Circuit's decision in *Hunt*. *See Short v. Hartman*, 87 F.4th 593, 605 (4th Cir. 2023) ("A Supreme Court decision overrules or abrogates our prior precedent only if our precedent is 'impossible to reconcile' with a subsequent Supreme Court decision."). Here, the *Hemani* decision was clear that "nothing in our opinion should be taken to cast doubt" on the validity of Section 922(g)(1) or prior decisions interpreting it (like *Hunt*). *Hemani*, 608 U.S. at 791 n.6. Accordingly, Defendant's *Pro Se* Motion will be DENIED.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for a New Trial (Dkt. 140) is DENIED; and it is

FURTHER ORDERED that the Motion for Extension of Time (Dkt. 149) is GRANTED-IN-PART and DENIED-IN-PART. It is granted insofar as it sought an extension of time; and it is

FURTHER ORDERED that the Motion to Amend New Trial Claim (Dkt. 169) is DENIED; and it is

FURTHER ORDERED that the Motion to Deny (Dkt. 174) is GRANTED.

It is SO ORDERED.

Alexandria, Virginia
November 5, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge